UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: ROBERT ALLEN FRYAR                                          CASE NO. 05-19169-DWH
KATHY FRYAR

IN RE: VIOLET GALE JUMPER                                          CASE NO. 08-11744-DWH
TIMOTHY DEAN HOPPER

OPERATORS INVESTMENT GROUP, A                                      PLAINTIFFS
PARTNERSHIP; ROBERT A. FRYAR, KATHY FRYAR,
EDITH CAROLYN FRYAR, GALE JUMPER
HENRY E. GIPSON, DAVID SMITH, THOMAS W. LACY
AND WAYNE JUMPER

VERSUS                                ADVERSARY PROCEEDING NO. 08-1040-DWH

GE CAPITAL SMALL BUSINESS FINANCE                                  DEFENDANTS
CORPORATION, ROLISON & SONS
LOGGING, INC., ROLISON TIMBER CO., INC.,
ROLISON TIE & TIMBER CO., INC., GARY
ROLISON, INDIVIDUALLY, MARTHA
ROLISON, INDIVIDUALLY, KNOX
HARDWOODS, LLC, ALVA PATTERSON,
INDIVIDUALLY, PRECISION HUSKY
CORPORATION, AND MIKE WEST,
INDIVIDUALLY, AND UNKNOWN DEFENDANTS A-Z

INTERVENORS:

HENRY J. APPLEWHITE, CHAPTER 7 TRUSTEE, AND
TIPPAH ELECTRIC POWER ASSOCIATION

## OPINION

On consideration before the court is a motion to approve compromise and settlement filed by Henry J. Applewhite, Chapter 7 trustee, ("trustee"); a joinder in said motion having been filed by GE Capital Small Business Finance Corporation, ("GE Capital"); an objection to said motion having been filed by the plaintiffs, Operators Investment Group, a Partnership, Robert A. Fryar,

Kathy Fryar, Edith Carolyn Fryar, Gale Jumper, Henry E. Gipson, David Smith, Thomas W. Lacy, and Wayne Jumper (hereinafter collectively referred to as "OIG"); and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of the above captioned adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a non-core proceeding to which all of the parties have consented to this court entering a final judgment as contemplated in 28 U.S.C. § 157(c)(2).

II.

The OIG plaintiffs originally filed the above captioned cause of action in the Circuit Court of Tippah County, Mississippi, but it was removed to this court by GE Capital on February 12, 2008. The crux of the complaint is that GE Capital wrongfully repossessed and sold a drum debarker system, ("debarker"), which was not subject to its "blanket" lien on equipment. Consequently, the ownership of the debarker is a critical issue in this proceeding.

On March 17, 2009, this court entered an order allowing the trustee, by and through special counsel, to intervene on behalf of the Fryar bankruptcy estate and the Jumper/Hopper bankruptcy estate. On April 24, 2009, this court entered a separate order allowing Tippah Electric Power Association to intervene.

The parties agreed to mediate their dispute, and, following a lengthy mediation session, the parties on January 19, 2012, entered into a Settlement Agreement. (Trustee's Exhibit 1) Since the Settlement Agreement contemplated that it was subject to the approval of this court, the trustee filed the aforesaid motion which is now under consideration. The OIG plaintiffs objected

2

to the approval of the Settlement Agreement, asserting that it had been executed by mistake.

At the hearing on the trustee's motion, several documents were introduced into evidence, to-wit:

    a.    An initial invoice, dated April 5, 2000, reflected that the debarker was to be sold to Robert B. Fryar Lumber Company for a purchase price of $200,000.00.

    b.    An initial appraisal was sent to Robert B. Fryar Sawmill and Lumber Company, Inc., dated July 13, 2000, which reflected a value for the debarker in the sum of $709,000.00. This appraisal was executed by Robert C. Patterson.

    c.    A second appraisal was sent to OIG on July 13, 2000, which reflected the identical appraised value of $709,000.00. This appraisal was executed by Bob Patterson.

    d.    A document which appears to be a bill of sale indicates that the debarker was sold to OIG for a purchase price of $165,000.00. This document was dated September 2, 2000, and was executed by Bob Patterson.

After the mediation had been ongoing for several hours, GE Capital represented to the other parties that the aforementioned documents had been examined by a forensic examiner who had concluded that certain signatures on the documents had been transposed. Although the court was not specifically advised, the court presumes that the questionable documents were those which purported to convey the debarker to OIG. As such, GE Capital took the position that because of this, the debarker was actually owned by Robert B. Fryar Sawmill and Lumber Company, Inc., and not OIG. Although the OIG plaintiffs thought that they owned the debarker, Robert Fryar and Thomas Lacy testified that this information was devastating to their position,

and they felt compelled to execute the Settlement Agreement.

After the mediation had been concluded, Robert Fryar undertook a concerted effort to locate the seller of the debarker, Robert C. Patterson. Fryar was ultimately successful in this effort and obtained an affidavit from Patterson outlining the factual chronology of the sale. (OIG Exhibit 2). At the hearing Patterson testified that he initially thought that the sale was to be made to Robert B. Fryar Sawmill and Lumber Company, Inc., but was told shortly thereafter that the correct purchaser was OIG. He related that he modified the documentation to reflect OIG as the purchaser so that he could be paid the balance of the purchase price. Indeed, on September 8, 2000, the balance of the purchase price in the sum of $135,000.00, was transferred to Patterson from OIG's Merrill Lynch investment account. (OIG Exhibit 1) Patterson also indicated that his signatures appeared on each of the documents pursuant to his authorization, and that none of the signatures were fraudulent or forgeries. This testimony, of course, directly contradicts the information that was available to the parties that were participating in the mediation. As mentioned hereinabove, the representation that the documents contained forged or transposed signatures significantly impacted the issue as to who was the actual owner of the debarker.

When the mediation was concluding, the court finds that the following events occurred:

a.  The parties were mistaken as to critical facts regarding the ownership of the debarker. This includes the OIG plaintiffs, counsel for the trustee, as well as, representatives of GE Capital.

b.  While the signatures could have been transposed, this has been clarified by Patterson's unequivocal testimony that he authorized the signatures.

    c.    The forensic examiner's conclusion caused a misperception of the true facts which were highly material to the mediation's outcome and/or the decision to execute the Settlement Agreement.

The in court testimony of Patterson is new evidence which reshapes this entire scenario. The court is of the opinion that the execution of the Settlement Agreement occurred because none of the parties were fully informed of the actual facts. As such, the Settlement Agreement is the product of mutual mistake.

### III.

Since OIG's objection challenged the validity of the Settlement Agreement, this issue must be determined by state contract law essentially because Mississippi recognizes that "[a] settlement is a contract." *Hastings v. Guillot*, 825 So. 2d 20, 23 (Miss. 2002). A contract is "binding and conclusive in the absence of fraud, <u>mutual mistake</u>, or collusion." *Ruff v. Estate of Ruff*, 989 So. 2d 366, 372 (Miss. 2008) (emphasis added). "The law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, <u>mistake</u>, or overreaching." *Hastings*, 825 So. 2d at 24 (emphasis added). "A contract may be set aside, however, where [the] parties at the time of the agreement were operating under a mutual mistake of fact." *White v. Cooke*, 4 So. 3d 330, 334 (Miss. 2009). It is well settled under Mississippi law that relief may be granted when "parties enter into the contract under a mutual mistake in a material fact, and without which mistake the contract would not have been made." *Everett v. Hubbard*, 25 So. 2d 768, 770 (Miss. 1946). "A mutual mistake is defined as [a] mistake that is shared and relied on by both parties to a contract." *Bert Allen Toyota, Inc. v. Grasz*, 909 So. 2d 763, 768 (Miss.Ct.App. 2005) (internal quotations omitted).

GE Capital has asserted that parol evidence should not be admissible to contradict an otherwise unambiguous Settlement Agreement. Although it well settled that Mississippi recognizes the parol evidence rule, it is also "practically a universal rule that . . . parol evidence is admissible to establish the fact of fraud or of a mistake." *Bedford v. Kravis*, 622 So. 2d 291, 294 (Miss. 1993). Because this court is of the opinion that mutual mistakes and mutual misperceptions were clearly present prior to the execution of the Settlement Agreement, parol evidence is admissible to address and clarify these factors.

IV.

Because the foregoing illustrates that all of the parties to the mediation and the resulting Settlement Agreement were acting on the basis of misperceptions, this court concludes that mutual mistake mandates the Court's disapproval of the Settlement Agreement.

A separate order, consistent with this opinion, will be entered contemporaneously herewith.

This the 6th day of March, 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE